IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DIVISION OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| | ) | |
| vs. | ) | NO.   2:14-CR-20006-002 |
| | ) | |
| | ) | |
| NAKITA J. BROOKS, | ) | |
| | ) | |
| DEFENDANT. | ) | |

## DEFENDANT'S RESPONSE TO THE PRE-SENTENCE INVESTIGATION REPORT

COMES Now the Defendant, Nakita J. Brooks, by and through her counsel of record, in accordance with Rule 32(c) Federal Rules of Criminal Procedure, Rule 32.1 of the Local Criminal Rules, and 6A1.2 of the United States Sentencing Commission Guidelines Manual, and submits the following Response to the Pre-Sentence Investigation Report filed in this cause.

Defendant has received and reviewed the Pre-Sentence Investigation Report dated June 11, 2014, and hereby accepts the substantive contents of the Report without objections or corrections.

A.  SENTENCING CONSIDERATIONS

This Court must now decide on a case by case basis what sentence is reasonable considering the sentencing guidelines, now advisory in nature, as well as the other statutory factors set out in the Sentencing Reform Act. See, *U.S. v. Booker*, 125 S. Ct. 738 (2005). Title 18, U.S.C. § 3553(a) requires a sentencing court to consider:

> (1) the nature and circumstances of the offense and the history and characteristics of defendant;

(2) the need for the sentence imposed:

> (A) to reflect the seriousness of the offense, to promote respect for the law and to provide just punishment for the offense;

> (B) to afford adequate deterrence for criminal conduct;

> (C) to protect the public from further crimes of the defendant; and

> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for:

> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines......;

(5) any pertinent policy statement issued by the Sentencing Commission....;

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

## B. FACTS

On April 11, 2014, defendant, Nakita Brooks, pled guilty to count one of a three-count indictment wherein she was charged with Conspiracy to Defraud the Government. See, paragraphs 1 & 2 of the PSIR. The government's investigation revealed that between 2009 and 2011, defendant filed fraudulent tax returns in an attempt to steal $1,401,789.00. However, the actual amount of fraudulent tax returns received by defendant was $690,767.84. See, paragraph 18 of the PSIR.

The government's investigative file also shows that defendant had engaged in the same identical criminal conduct between 2004 and 2007, when she and a co-defendant filed fraudulent tax returns in the amount of $2,106,627.00. This criminal conduct was the subject of a criminal indictment dated October 21, 2010 in Case No. 2:10-CR-20342. See, paragraph 4 of the PSIR.

Furthermore, the investigation shows that some of the criminal conduct that is the subject matter of

the instant indictment occurred before the indictment in Case No. 2:10-CR-20342 and continued

after the indictment in Case No. 2:10-CR-20342.  In other words, the criminal conduct in the instant

case began before the indictment in the prior case and continued until the latter part of 2011, when

defendant was sentenced to 9 years imprisonment for the prior case.  See, paragraphs 18, 26 and 46.

Defendant was sentenced in the prior case on December 20, 2011.

C. RELEVANT CONDUCT

All of the criminal conduct for which defendant pled guilty and was sentence to nine (9) years

imprisonment on December 20, 2011, in Case No. 2:10-CR-20342, constitutes relevant conduct to

the offense of conviction in the instant case.  According to § 1B1.3 of the Sentencing Guidelines,

relevant conduct is determined on the following basis:

(a) Chapters Two (Offense Conduct) and Three (Adjustments).  Unless otherwise
specified, (i) the base offense level where the guideline specifies more than one base
offense level, (ii) specific offense characteristics and (iii) cross references in Chapter
Two, and (iv) adjustments in Chapter Three, shall be determined on the basis of the
following:

(1) (A)    all acts and omissions committed, aided, abetted, counseled,
commanded, induced, procured, or willfully caused by the defendant;
and

(B)    in the case of a jointly undertaken criminal activity (a criminal plan,
scheme, endeavor, or enterprise undertaken by the defendant in concert
with others, whether or not charged as a conspiracy), all reasonably
foreseeable acts and omissions of others in furtherance of the jointly
undertaken criminal activity,

that occurred during the commission of the offense of conviction, in
preparation for that offense, or in the course of attempting to avoid detection or
responsibility for that offense;

(2) solely with respect to offenses of a character for which § 3D1.2(d) would
require grouping of multiple counts, all acts and omissions described in
subdivisions (1)(A) and (1)(B) above that were part of the same course of

conduct or common scheme or plan as the offense of conviction;

(3)    all harm that resulted from the acts and omissions specified in subsections (a)(1) and (a)(2) above, and all harm that was the object of such acts and omissions; and

(4)    any other information specified in the applicable guideline.

Since, as noted above at § 1B1.3(a), relevant conduct includes offenses of a character for which 3D1.2(d) of the Sentencing Guidelines would require grouping, the Base Offense Level in the instant case is calculated at 18, based upon the aggregate amount of loss in the prior case plus the amount of loss in the instant case, i.e. $3,508,416.00. See, paragraphs 19 and 30 of the PSIR. Moreover, the government's investigative file, at bates-stamped page 86 of defendant's discovery package, list as "False Claims - Relevant Conduct" losses in 2009 at $455,446.00, in 2010 at $346,004.00 and in 2011 of $600,339.00, for a total loss of $1,401,789.00 in the instant case.

## D. SENTENCING OPTIONS

Nakita Brooks has served approximately 30 months of the 108 month sentence imposed in Case No. 2:10-CR-20342. Section 5G1.3(b) of the Sentencing Guidelines addresses the precise situation in this case, i.e. imposition of a sentence on a defendant subject to an undischarged term of imprisonment. The pertinent provisions of Section 5G1.3 reads:

(b)    …a term of imprisonment resulted from another offense that is relevant conduct to the instant offense of conviction under the provisions of subsections (a)(1), (a)(2), or (a)(3) of §1B1.3 (Relevant Conduct) and that was the basis for an increase in the offense level for the instant offense under Chapter Two (Offense Conduct) or Chapter Three (Adjustments), the sentence for the instant offense shall be imposed as follows:

    (1)    the court shall adjust the sentence for any period of imprisonment already served on the undischarged term of imprisonment if the court determines that such period of imprisonment will not be credited to the federal sentence by the

Bureau of Prisons; and

    (2)    the sentence for the instant offense shall be imposed to run concurrently to the remainder of the undischarged term of imprisonment.

    (c)    (Policy Statement) In any other case involving an undischarged term of imprisonment, the sentence for the instant offense may be imposed to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense.

It appears from the unique facts of this case and the applicable Sentencing Guidelines, Nakita Brooks must be given credit for the time she has already served in Case No. 2:10-CR-20342 and that the sentence in the instant must be imposed to run concurrently to the remainder of the undischarged term of imprisonment.  A similar result, i.e. concurrent sentencing, was reached in the matter of *United States v. Fleming*, Cv. No. 05-2954-B/P (W.D. Tenn. June 30, 2006), see Footnote #1. Courtesy copy attached.

E.  SUBSTANTIAL ASSISTANCE

    Nakita Brooks is prepared to testify at her sentencing hearing regarding her extensive efforts to provide substantial assistance for the government.

    WHEREFORE PREMISES CONSIDERED, Nakita J. Brooks, respectfully requests this Honorable Court sentence the defendant to concurrent sentences as requested above. And, if the United States elects to make a motion for downward departure pursuant to § 5K1.1 of the U.S.S.G., Nikita Brooks would respectfully request the Court determine any such downward departure from that starting point. Alternatively, Nakita Brooks hereby requests a downward departure/variance for super substantial assistance.

            Respectfully submitted,

            /s/ Coleman W. Garrett

Coleman W. Garrett, BPR #010325
212 Adams Avenue
Memphis, TN 38103
901-529-0022
901-529-0299
cwgarrett@bellsouth.net

## CERTIFICATE OF SERVICE

I, Coleman W. Garrett, hereby certify that a true and correct copy of the foregoing has been sent electronically, to Assistant United States Attorney Daniel French, 167 North Main Street, Suite 800, Federal Building, Memphis, TN  38103, and United States Probation Officer Jennifer F. Perkins, 167 North Main Street, 2nd Floor, Memphis, TN 38103, this the 30th day of June, 2014.

/s/Coleman W. Garrett
Coleman W. Garrett

(2006)

## UNITED STATES OF AMERICA, Plaintiff,

### v.

## TERESA FLEMING, Defendant.

Cv. No. 05-2954-B/P, Cr. No. 04-20311-01-B., 05-20164-01-B.

**United States District Court, W.D. Tennessee, Western Division.**

June 30, 2006.

# ORDER DENYING MOTION PURSUANT TO 28 U.S.C. § 2255 ORDER DENYING CERTIFICATE OF APPEALABILITY AND ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH

J. BREEN, Magistrate Judge.

Defendant Teresa Fleming, Bureau of Prisons inmate registration number XXXXX-XXX, an inmate at the Federal Correctional Institution in Marianna, Florida, filed a pro se motion pursuant to 28 U.S.C. § 2255 on December 20, 2005.

Fleming was employed as a data transcriber with the Internal Revenue Service ("IRS") in Memphis, Tennessee and, as such, was responsible for transcribing data from individual income tax returns into the IRS processing system. Fleming and several other individuals entered into a conspiracy to steal money belonging to the IRS and to defraud the IRS by diverting tax refunds to bank accounts controlled by them. Two criminal cases were filed against Fleming in this district arising from these actions.

On July 29, 2004, a federal grand jury returned a forty-eight (48) count indictment against Fleming and five coconspirators in United States v. Fleming, et al., No. 04-20311 (W.D. Tenn.). The first count charged all defendants with conspiring to divert tax refunds due to taxpayers by means of wire communications, in violation of 18 U.S.C. §§ 1343 and 2. The total amount of the diversions, and attempted diversions, was $506,017.71. The second count charged all defendants with conspiring to engage in a scheme and artifice to defraud and to obtain money in the amount of $506,017.71, in violation of 18 U.S.C. §§ 1343 and 2. Fleming was also named in counts 3-17, which alleged violations of 18 U.S.C. §§ 1353 and 2 in connection with particular wire transfers. Counts 19, 25, 26, 27, and 30 charged Fleming with embezzling money in the amount of $4696, $4692, $5066, 5441, $4647, respectively, belonging to the United States, in violation of 18 U.S.C. § 641. Counts 20-24, 28-29, and 31-33 charged Fleming and various codefendants with embezzling money belonging to the United States, in violation of 18 U.S.C. §§ 641 and 2. Counts 35-40 charged Fleming and various codefendants, aided and abetted by each other, with engaging in a monetary transaction by, through,

and to a financial institution, affecting interstate commerce in criminally derived property of a value in excess of $10,000, such property having been derived from wire fraud and theft of government property, in violation of 18 U.S.C. §§ 1957 and 2. Counts 41-44 and 46-47 charged Fleming and various codefendants, aided and abetted by each other, with conducting and attempting to conduct a financial transaction affecting interstate commerce, which involved the proceeds of wire fraud and theft of government property, with the intent to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of said specified unlawful activity, in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) and 2. Count 48 charged Fleming, for the purpose of opening a bank account in the name of Tiffany Boone, an assumed name, and for other purposes, with the intent to deceive, knowingly and falsely represented that a Social Security number she used to open the bank account was the Social Security number assigned to Tiffany Boone, in violation of 42 U.S.C. § 408(a)(7)(B).

Pursuant to a written plea agreement, Fleming appeared before District Judge Jon Phipps McCalla on February 28, 2005 to enter a guilty plea to counts 1, 4, 6, 7, 9, 12, 13, 15, 16, 17, 28, 32, 35, 36, 37, 38, 39, 41, 44, and 48 of the indictment. The relevant provisions of the plea agreement are as follows:

> 2. The defendant admits that she is in fact guilty of the offenses charged in Counts 1, 4, 6, 7, 9, 12, 13, 15, 16, 17, 28, 32, 35, 36, 37, 38, 39, 41, 44, and 48 of the Indictment and acknowledges that she has been advised and does fully understand the nature of the charges to which pleas are offered and the maximum possible penalty provided by law; that she has the right to be tried by a jury, and at that trial she has the right to the assistance of counsel, the right to confront and cross-examine witnesses against her and the right not to be compelled to incriminate herself and that if she pleads guilty, there will not be a trial of any kind, so that by pleading guilty she waives the right to a trial.

> . . . .

> 4. If at the time of sentencing counsel for the United States is of the opinion that the defendant has affirmatively accepted responsibility for the criminal conduct which is the subject of this plea agreement, the United States agrees to recommend that the defendant should receive the maximum applicable reduction for acceptance of responsibility pursuant to § 3E1.1 of the Sentencing Guidelines with the understanding that if the Court does not award any such reduction, the defendant will not be allowed to withdraw her plea of guilty.

> 5. The defendant has indicated her desire to cooperate with the United States in the investigation and prosecution of others. The United States agrees to consider making a motion pursuant to 5K1.1 of the United States Sentencing Guidelines on behalf of Defendant at the time of her sentencing. Defendant understands that the only promise being made is to consider a motion pursuant to 5K1.1. This is not a promise to make such a motion. The decision whether to make a motion pursuant to 5K1.1 is within the sole discretion of the United States. The decision whether or not to make such a motion will be made only after it has been determined that Defendant has given complete and

truthful cooperation and/or testimony in the matters under investigation and prosecution. Defendant understands that if her cooperation and testimony is anything but complete, truthful, and candid, the United States will make the sentencing court aware of this, will seek enhancement of her sentence based upon any lack of candor or truthfulness, and further will prosecute Defendant for any crimes that might be provable. Defendant also understands that any new criminal activity would be another reason not to make such a motion.

. . . .

7. The defendant agrees that should the court deem restitution appropriate, the court may consider losses from the counts of conviction and the dismissed counts.

8. There are no agreements as to the term of imprisonment, supervised release, probation, fines or restitution. These matters are left to the discretion of the United States District Court.

The case was thereafter transferred to this judge and consolidated for sentencing with case no. 05-20164.

On April 27, 2005, a nine-count criminal information was returned against Fleming in United States v. Fleming, No. 05-20164-B (W.D. Tenn.). In particular, Fleming was charged with filing the following tax returns that claimed false, fictitious, and fraudulent refund requests:

| Count | Taxpayer's name | Refund claimed |
|-------|-----------------|----------------|
| 1 | Jennifer Fleming | $ 2,538 |
| 2 | Lisa Fleming | 1,963 |
| 3 | Althea Fleming | 9,725 |
| 4 | Brenda Fleming | 9,882 |
| 5 | Jackie L. Fleming | 12,866 |
| 6 | Theresa A. Fleming | 11,119 |
| 7 | Shirley Fleming | 3,909 |
| 8 | Willie D. Fleming | 4,149 |
| 9 | Elizabeth A. Fleming | 4,758 |

The intended fraud loss for the nine false returns charged in the information was $60,909. In total, Fleming prepared at least forty-three (43) false claims for refunds, with an intended total fraud loss of $209,643, and some claims were filed after she was indicted in case no. 04-20311. The IRS's Fraud Detection Team stopped the issuance of the majority of the refunds claimed by Fleming for 2002 and 2003 and all of the refunds for 2004.

Pursuant to a written plea agreement, Fleming appeared before this judge on April 27, 2005 to enter a guilty plea to the information. The plea agreement provided, in pertinent part, as follows:

2. By signing this agreement, defendant Teresa Fleming, [sic] admits that she is, in fact, guilty of the offenses charged in the Information.

United States v. Fleming, Dist. Court, WD Tennessee 2006 - Google Sc...     Page 2 of 11

Case 2:14-cr-20006-JPM-1 Document 58 Filed 06/30/14 Page 10 of 17    PageID 92

3. The parties agree that they will request of the Court that the Information filed in this cause be consolidated for sentencing with the counts of conviction as to Teresa Fleming in Cr. No. 04-20311-Ml.

4. The parties have not entered into an agreement as to any particular sentence of incarceration, supervised release and fines.

5. The defendant agrees that for the purpose of assessing restitution, the Court may consider losses derived from the counts of conviction and losses caused from uncharged conduct of the defendant.

The Court issued an order accepting the guilty plea on May 12, 2005.

On May 20, 2005, the parties filed a joint motion to consolidate case nos. 04-20311 and 05-20164 for sentencing. This judge conducted a sentencing hearing for both cases on August 3, 2005, at which time Fleming was sentenced to a total of seventy (70) months imprisonment, to be followed by a two-year period of supervised release.[1] Fleming was also ordered to pay restitution in the amount of $423,309.13. Judgment was entered on August 9, 2005. Fleming did not take a direct appeal.

Fleming has now filed a motion pursuant to 28 U.S.C. § 2255. Although the issues asserted in the motion are not clearly articulated, they appear to consist of the following:

1. Her guilty plea was not intelligent and voluntary;

2. She was denied the effective assistance of counsel, in violation of the Sixth Amendment;

3. An unspecified objection to the statements of codefendants; and

4. She did not get the benefits she anticipated from her cooperation with the Government.

The Court will address these issues in turn.

With respect to the first issue, concerning the validity of her guilty pleas, Fleming asserts, without elaboration, as follows:

Excepting [sic] a guilty plea not explained to me. Didn't understand what was going on. Excepting [sic] a guilty plea not being properly counseled. I was told that I didn't have options to anything else.

As a preliminary matter, Fleming's presentation of this issue does not comply with Rule 2(b) of the Rules Governing § 2255 Proceedings for the United States District Courts ("Section 2255 Rules"), which requires, inter alia, that the motion shall (1) specify all the grounds for relief available to the moving party[ and] (2) state the facts supporting each ground." Although the Sixth Circuit has not had occasion to address the pleading standards applicable to § 2255 motions, the Second Circuit has stated as follows:

To warrant plenary presentation of evidence, the application must contain assertions of fact that a petitioner is in a position to establish by competent evidence. . . . Whether there is a genuine issue of material fact depends upon the sufficiency of those factual allegations. Airy generalities, conclusory assertions and hearsay statements will not suffice because none of these would be admissible evidence at a hearing.

United States v. Aiello, 814 F.2d 109, 113-14 (2d Cir. 1987) (citations omitted); accord Taylor v. United States, 287 F.3d 658, 661 (7th Cir. 2002) (noting that, while notice pleading is the standard in ordinary civil litigation, "Rule 2(b) departs from Rule 8 [of the Federal Rules of Civil Procedure] by requiring some fact pleading").[2]

Fleming's motion does not distinguish between the two guilty pleas, does not mention the written plea agreement she signed in each case and the guilty plea colloquies,[3] and does not explain why she believes she was "not properly counseled" in each case. Moreover, although Fleming states, vaguely, that "I was told that I didn't have options to anything else," that statement appears to be nothing more than a recommendation by her attorneys that she plead guilty because she had no viable defense if the cases went to trial. Fleming also does disclose what she learned, after her guilty pleas, that led her to conclude that she was "not properly counseled," and she does not state that, if only she had had that information at the time the plea agreements were presented to her, there is a reasonable probability she would have rejected one or both agreements and proceeded to trial.

Fleming did not file a motion to withdraw her guilty pleas prior to the entry of judgment. Moreover, Fleming did not challenge the intelligence of her pleas on direct appeal, and a § 2255 motion is not a substitute for a direct appeal. Sunal v. Lange, 332 U.S. 174, 178 (1947). Generally, "the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review." Bousley v. United States, 523 U.S. 614, 621 (1988). Because Fleming did not raise this issue on direct appeal, even though she had all the information she now asserts in support of this motion, she has procedurally defaulted this claim. Id.; see also El-Nobani v. United States, 287 F.3d 417, 420 (6th Cir. 2002).

Although there are two exceptions to the procedural default rule, neither is applicable here. A defendant can overcome a procedural default if she demonstrates cause and prejudice sufficient to excuse her failure to raise these issues previously, Bousley, 523 U.S. at 622, or she establishes that a constitutional error "'has probably resulted in the conviction of one who is actually innocent,'" id. at 623 (quoting Murray v. Carrier, 477 U.S. 478, 496 (1986)). In this case, Fleming has not attempted to establish cause and prejudice, and the plea agreements expressly admit that she is, in fact, guilty of the charges to which she entered guilty pleas. Accordingly, Fleming cannot overcome her procedural default.

The first issue is without merit and is DISMISSED.

Next, Fleming asserts that she was denied the effective assistance of counsel, in violation of the Sixth Amendment.

A claim that ineffective assistance of counsel has deprived a defendant of his Sixth Amendment right to counsel is controlled by the standards enunciated in Strickland v. Washington, 466 U.S. 668, 687 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

In order to demonstrate deficient performance by counsel, a defendant must demonstrate that "counsel's representation fell below an objective standard of reasonableness." Id. at 688.

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

Id. at 689 (citation omitted); see also Coe v. Bell, 161 F.3d 320, 342 (6th Cir. 1999) ("The specifics of what Coe claims an effective lawyer would have done for him are too voluminous to detail here. They also largely miss the point: just as (or more) important as what the lawyer missed is what he did not miss. That is, we focus on the adequacy or inadequacy of counsel's actual performance, not counsel's (hindsight) potential for improvement."); Adams v. Jago, 703 F.2d 978, 981 (6th Cir. 1983) ("a defendant 'has not been denied effective assistance by erroneous tactical decisions if, at the time, the decisions would have seemed reasonable to the competent trial attorney'") (citations omitted).

A prisoner attacking her conviction bears the burden of establishing that she suffered some prejudice from her attorney's ineffectiveness. Lewis v. Alexander, 11 F.3d 1349, 1352 (6th Cir. 1993); Isabel v. United States, 980 F.2d 60, 64 (1st Cir. 1992). "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant." Strickland, 466 U.S. at 697. If a reviewing court finds a lack of prejudice, it need not determine whether, in fact, counsel's performance was deficient. Id. at 697.

To demonstrate prejudice, a prisoner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. Additionally, however, in analyzing prejudice,

> the right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial. Absent some effect of the challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated.

Lockhart v. Fretwell, 506 U.S. 364, 368 (1993) (citing United States v. Cronic, 466 U.S. 648, 658 (1984)); see also Strickland, 466 U.S. at 686 ("The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."). "Thus analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective." Lockhart, 506 U.S. at 369.

The two-part test articulated in Strickland applies to challenges to guilty pleas based on ineffective assistance of counsel. Hill v. Lockhart, 474 U.S. 52, 57-58 (1985). Where, as here, a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" Id. at 56 (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)); see also Tollett v. Henderson, 411 U.S. 258, 267 (1973). Moreover, "in order to satisfy [Strickland's] 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59.[4]

The motion does not clearly set forth the factual basis for this claim, stating only as follows:

> My lawyer didn't support me on this case. There was lack of communication, no meetings to discuss my case, just to sign papers only. Never read my PSI report; never was informed on anything that pertained to my sentencing. Didn't know what was stated from co-defendants until now.

The presentation of this issue does not comply with Rule 2(b) of the Section 2255 Rules. Fleming's motion does not distinguish between the two criminal cases, does not explain her failure to raise at her sentencing hearing her attorney's alleged failure to review the presentence report with her, and does not identify any inaccuracy in the presentence report or any issue she contends should have been raised at the sentencing hearing. As for the statement that she "[d]idn't know what was stated from co-defendants until now," it is not clear which codefendant is referred to, what information was allegedly provided the Government by that codefendant, and why that information has led Fleming to regret her decision to plead guilty and to challenge the sentence that was imposed. Fleming also does not explain the circumstances that prevented her from learning that information "until now."

Moreover, Fleming does not state that, if only her attorney had had more meetings with her and had spent more time reviewing the presentence report, there is a reasonable probability she would not have entered guilty pleas or that she would have received a lower sentence. Likewise, Fleming also does not state that, if only she knew what her codefendants had told the Government, there is a reasonable probability she would not have entered guilty pleas in one or both cases.

This issue is without merit and is DISMISSED.

In her third issue, entitled "Evidence and Statements," Fleming states as follows:

> Polygraph test wasn't ordered for co-defendant Lorray Broden. During sentencing I wasn't aware of new evidence or statements against me. There were several statements used from co-defendants that made my testimony not true.[5]

Once again, the presentation of this issue does not comply with Rule 2(b) of the Section 2255 Rules. Plaintiff does not explain the relevance of the failure to subject Ms. Broden to a polygraph examination or describe the "new evidence or statements" that may or may not have been used at the sentencing hearing. The Court made no finding that Fleming testified falsely at the sentencing hearing. Fleming does not state that any codefendant provided inaccurate information or testimony. This issue is so vague that the Court is unable to identify any constitutional violation.

This issue is without merit and is DISMISSED.

Finally, Fleming complains, vaguely, about the length of her sentence in light of the information she provided the Government. She states as follows:

> I was called to testify in a trail [sic] and I don't think I got the upper hand on my sentencing. My points was very high. First time offense guidelines[.]

As a preliminary matter, it is not clear that Fleming is alleging that the sentence imposed in this case was contrary to the sentencing guidelines or unconstitutional. Instead, she has stated only that she had hoped for a lighter sentence in light of her cooperation. That claim is not cognizable in a § 2255 motion, which authorizes the Court to grant a motion to vacate only if "the sentence was imposed in violation of the Constitution or laws of the United States; or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255, ¶ 1.[6]

Moreover, this claim is substantively without merit. Fleming pleaded guilty to numerous extremely serious violations of federal law, resulting in hundreds of thousands of dollars of loss to the IRS. Even after her indictment in case no. 04-20311, Fleming did not refrain from further criminal behavior. The plea agreements in both cases expressly state that there are no agreements as to the length of sentence that will be imposed. See supra pp. 4, 6. Despite the language in the plea agreement in case no. 04-20311 that "[d]efendant also understands that any new criminal activity would be another reason not to make [a § 5K1.1] motion," see supra p. 4, the Government did file a substantial assistance motion. As a result, Fleming received a sentence that was seventeen (17) months less than the minimum sentence provided in the sentencing guidelines.

This issue is without merit and is DISMISSED.

The motion, together with the files and record in this case "conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255; see also Rule 4(b), Section 2255 Rules. Therefore, the Court finds that a response is not required from the United States Attorney and that the motion may be resolved without an evidentiary hearing. United States v. Johnson, 327 U.S. 106, 111 (1946); Baker v. United States, 781 F.2d 85, 92 (6th Cir. 1986). Defendant's conviction and sentence are valid and therefore, her motion is DENIED.

Consideration must also be given to issues that may occur if the defendant files a notice of appeal. Twenty-eight U.S.C. § 2253(a) requires the district court to evaluate the appealability of its decision denying a § 2255 motion and to issue a certificate of appealability ("COA") only if "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); see also Fed. R. App. P. 22(b); Lyons v. Ohio Adult Parole Auth., 105 F.3d 1063, 1073 (6th Cir. 1997) (district judges may issue certificates of appealability under the AEDPA). No § 2255 movant may appeal without this certificate.

In Slack v. McDaniel, 529 U.S. 473, 483-84 (2000), the Supreme Court stated that § 2253 is a codification of the standard announced in Barefoot v. Estelle, 463 U.S. 880, 893 (1983), which requires a showing that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were '"adequate to deserve encouragement to proceed further.'" Slack, 529 U.S. at 484 (quoting Barefoot, 463 U.S. at 893 & n.4).

The Supreme Court recently cautioned against undue limitations on the issuance of certificates of appealability:

> [O]ur opinion in Slack held that a COA does not require a showing that the appeal will succeed. Accordingly, a court of appeals should not decline the application of a COA merely because it believes the applicant will not demonstrate an entitlement to relief. The holding in Slack would mean very little if appellate review were denied because the prisoner did not convince a judge, or, for that matter, three judges, that he or she would prevail. It is consistent with § 2253 that a COA will issue in some instances where there is no certainty of ultimate relief. After all, when a COA is sought, the whole premise is that the prisoner '"has already failed in that endeavor.'"

Miller-El v. Cockrell, 537 U.S. 322, 337 (2003) (quoting Barefoot, 463 U.S. at 893). Thus,

> [a] prisoner seeking a COA must prove '"something more than the absence of frivolity'" or the existence of mere "good faith" on his or her part. . . . We do not require petitioners to prove, before the issuance of a COA, that some jurists would grant the petition for habeas corpus. Indeed, a claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail.

Id. at 338 (quoting Barefoot, 463 U.S. at 893); see also id. at 342 (cautioning courts against conflating their analysis of the merits with the decision of whether to issue a COA; "The question is the debatability of the underlying constitutional claim, not the resolution of that debate.").[7]

In this case, the defendant's claims are clearly without merit for the reasons previously stated. Because she cannot present a question of some substance about which reasonable jurists could differ, the Court DENIES a certificate of appealability.

The Sixth Circuit has held that the Prison Litigation Reform Act of 1995, 28 U.S.C. § 1915(a)-(b), does not apply to appeals of orders denying § 2255 motions. Kincade v. Sparkman, 117 F.3d 949, 951 (6th Cir. 1997). Rather, to appeal in forma pauperis in a § 2255 case, and thereby avoid the appellate filing fee required by 28 U.S.C. §§ 1913 and 1917, the prisoner must obtain pauper status pursuant to Federal Rule of Appellate Procedure 24(a). Kincade, 117 F.3d at 952.[8] Rule 24(a) provides that a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a)(1). However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal in forma pauperis, the prisoner must file her motion to proceed in forma pauperis in the appellate court. See Fed. R. App. P. 24(a) (4)-(5).

In this case, for the same reasons the Court denies a certificate of appealability, the Court determines that any appeal would not be taken in good faith. It is therefore CERTIFIED, pursuant to Fed. R. App. P. 24(a), that any appeal in this matter is not taken in good faith, and leave to appeal in forma pauperis is DENIED. Accordingly, if movant files a notice of appeal, she must also pay the full $455 appellate filing fee or file a motion to proceed in forma pauperis and supporting affidavit in the Sixth Circuit Court of Appeals within thirty (30) days.

IT IS SO ORDERED.

[1] In case no. 04-20311, Fleming was sentenced to concurrent terms of 60 months on counts 1, 4, 6, 7, 9, 12, 13, 15, 16, 17, and 48. Fleming was also sentenced to concurrent terms of 63 months on counts 28, 32, 35, 36, 37, 38, 39, 41, and 44, to be served concurrently to the sentence imposed on the other counts. In case no. 05-20164, Fleming was sentenced to concurrent terms of 60 months on each count, to be served concurrently with the sentence imposed in case no. 04-20311. Pursuant to § 2J1.7 of the United States Sentencing Guidelines ("U.S.S.G."), concerning commission of an offense while on release, Fleming was sentenced to an additional seven months, to be served consecutive to the 63-month sentence already imposed.

The defendant's sentence was calculated as follows: Pursuant to U.S.S.G. § 3D1.2(d), all counts of conviction for both cases constitute a single group because the offense level is determined largely on the total amount of loss. The money-laundering guidelines were used to calculate the base offense level. Pursuant to U.S.S.G. § 2S1.1(a)(1), the base offense level is the level for the underlying offense for which the laundered funds were derived. In this case, the underlying offense is theft and embezzlement, and the base offense level is 6. U.S.S.G. § 2B1.1(a)(2). Fleming received a 14-level increase, pursuant to U.S.S.G. § 2B1.1(b)(1)(H), because the total loss in this case was $713,660.71. Fleming received a two-level increase, pursuant to U.S.S.G. § 2S1.1(b)(2)(A), because she was convicted under 18 U.S.C. § 1956; a three-level increase, pursuant to 18 U.S.C. § 3147 and U.S.S.G. § 2J1.7, because she committed a new offense while on release; and a four-level increase, pursuant to U.S.S.G. § 3B1.1(a), because she was the organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive. Fleming did not qualify for a reduction in her offense level for acceptance of responsibility, notwithstanding her guilty plea, because she committed further criminal activity after her indictment in case no. 04-20311. Thus, Fleming's total offense level was 29. Given her criminal history category of I, the guidelines called for a sentencing range of 87-108 months. However, the Government filed a motion pursuant to U.S.S.G. § 5K1.1 because she provided substantial assistance to authorities.

[2] Although these decisions interpreted the previous version of Rule 2(b), the advisory committee notes make clear that the 2004 amendments "are intended to be stylistic and no substantive change is intended," with certain exceptions not applicable here.

[3] As previously noted, the plea agreement in case no. 04-20311 states that Fleming "acknowledges that she has been advised and does fully understand the nature of the charges to which pleas are offered and the maximum possible penalty provided by law." See supra p. 3.

[4] The Supreme Court emphasized that,

[i]n many guilty plea cases, the "prejudice" inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective assistance challenges to convictions obtained through a trial. For example, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than going to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial. Similarly, where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the "prejudice" inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial.

Id. at 59.

[5] Ms. Boden worked with the plaintiff at the IRS and was also charged in case no. 04-20311.

[6] Moreover, a claim that the sentencing court erred in its application of the sentencing guidelines is not cognizable in a § 2255 motion but must, instead, be raised on direct appeal. Grant v. United States, 72 F.3d 503, 505 (6th Cir. 1996); see also United States v. Lankford, Nos. 99-5870, 99-6075, 2000 WL 1175592, at *1 (6th Cir. Aug. 9, 2000) ("Technical violations of the federal sentencing guidelines will not warrant [§ 2255] relief."); United States v. Norfleet, No. 98-1311, 1999 WL 1281718, at *5 (6th Cir. Dec. 28, 1999) ("Normally, Norfleet could not obtain collateral review of sentencing guidelines errors."); Hunter v. United States, 160 F.3d 1109, 1114 (6th Cir. 1998) ("Relief is not available in a section 2255 proceeding for a claim of nonconstitutional, sentencing-guideline error when that error was procedurally defaulted through the failure to bring a direct appeal.").

[7] By the same token, the Supreme Court also emphasized that "[o]ur holding should not be misconstrued as directing that a COA always must issue." Id. at 337. Instead, the COA requirement implements a system of "differential treatment of those appeals deserving of attention from those that plainly do not." Id.

[8] Effective April 9, 2006, the appellate filing fee increased to $455 from $255.

Save trees - read court opinions online on Google Scholar.